UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 98-10750

WILLIAM L. CROWLEY,

Plaintiff-Appellant,

versus

KENNETH S. APFEL, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

December 10, 1999

Before POLITZ, DeMOSS, and BENAVIDES, Circuit Judges.

POLITZ, Circuit Judge:

William L. Crowley, Jr. appeals the district court's affirmance of the
Commissioner of Social Security's denial of disability benefits. For the reasons
assigned, we vacate and remand.

## BACKGROUND

**Procedural Background:**

On September 15, 1993, Crowley applied for disability benefits under Title

II of the Social Security Act[1] alleging that he was disabled as of June 22, 1993, and that his disability prevented him from engaging in any substantial gainful activity. After the claim was denied Crowley requested a hearing before an administrative law judge. The ALJ concluded that Crowley was not disabled. The Appeals Council denied review, making the ALJ's decision the final administrative determination of the Social Security Commissioner. Crowley sought judicial review. The district court affirmed the Commissioner's decision. This appeal followed.

**Factual Background:**

When he initially applied for disability benefits Crowley was 42 years old and had a high school education. He had worked as a truck driver for approximately 20 years, and in the early 1980s had been a pumper in the petroleum industry for about one year. He ceased working on or about May 8, 1993. On June 22, 1993, he went to the Veteran's Administration Hospital in Dallas, complaining of weight loss, increased thirst, increased urination, increased appetite, weakness and fatigue, blurred vision, dizziness and loss of sex drive. His blood glucose level was very high and he was diagnosed with diabetes mellitus. He was given dietary instructions and medications were prescribed.

---

[1] 42 U.S.C. § 401 *et seq.*

He was referred to a doctor, who began treating his diabetes on October 1, 1993. He was seen monthly and was given medication in an attempt to control the diabetes. In April 1994, he was seen at a VA facility where he reported cramping of both legs, unrelated to walking, dysethesias and burning in both upper and lower extremities, and stool incontinence. He underwent nerve conduction studies and an electromyogram in an attempt to determine the cause. The VA doctor diagnosed severe peripheral neuropathy (nerve degeneration) in both lower extremities as a result of the diabetes, but opined that Crowley's incontinence was not explained by the peripheral neuropathy.

Partly for complaints of bowel incontinence, Crowley underwent an MRI test of the lumbar spine in July 1994. The results showed "disc dessication and posterior bulge at L4-5 which narrows both neuroforamina at this level," with no significant spinal stenosis. On November 15, 1994, he was seen at the VA neurology clinic where he related a 10 month history of occasional fecal incontinence of formed stool, without the urge to defecate, occurring from twice a month to five times a week, but stated that it seemed to be improving. After an examination, the VA physician's impressions were sensory polyneuropathy, impotence, and fecal incontinence. The doctor planned consultations with the gastrointestinal and urology services to determine the cause of the incontinence, prescribed Prozac, and

3

advised Crowley to decrease his pepper and caffeine intake. On the same day, Crowley also had a follow-up visit for his diabetes, which resulted in an increase in his medication. Neurological and diabetes examinations were conducted in April 1995 at the VA clinic. The diagnostic assessment noted that Crowley continued to suffer with severe polyneuropathy, leg pain, occasional bowel hesitancy and impotence. Crowley was given a pain medication.

At the administrative hearing Crowley testified that he could not work because of neuropathy in his legs, cramping and burning in his feet, and back pain, all of which prevented him from walking or sitting for prolonged periods. Additionally, he testified that the medications he was taking caused nausea, dizziness, shaking, tremors, drowsiness, and sore throats. Further, Crowley testified that he suffered from an inability to control his urinary functions and from unpredictable, unavoidable fecal incontinence five to seven times per month. Crowley explained that he would do small chores on his aunt's farm that amounted to approximately one hour of work per day. Crowley's attorney conceded that Crowley's conditions did not meet the criteria in the Listing of Impairments in the regulations[2] and therefore the case would turn on whether Crowley had the residual functional capacity for work.

---

[2] 20 C.F.R. § 404, Subpt. P, App.1.

4

Because the medical records were not extensive and because Crowley could not afford to obtain medical services, the ALJ ordered that Crowley be seen by a consulting internist. Dr. Gary T. Evans examined Crowley and made a residual functional capacity assessment. In his report, Dr. Evans stated that Crowley's neuropathy most likely resulted from his diabetes mellitus and that his "symptoms of paresthesias and dysethesias as well as reports of urinary and fecal incontinence... could well be tied to the effects of uncontrolled diabetes for a number of years." Dr. Evans also concluded that Crowley's lower back pain is "difficult to quantify" and noted that Crowley had no problems moving about the office, but did exhibit some difficulty with heel and toe walking. The residual functional capacity assessment indicated that Crowley could lift and carry up to ten pounds and that he could sit, stand or walk for a total of eight hours a day at work, with up to four hours uninterrupted. Additionally, the assessment indicated that Crowley's low back pain would allow him to climb, kneel, stoop, crouch, or crawl only occasionally, but that he suffered from no other limitations.

Adopting the internist's findings, the ALJ concluded that Crowley's subjective pain and other nonexertional impairments did not prevent him from performing all work activities. Although Crowley's impairments precluded him from returning to his past relevant work as a truck driver, in view of his residual

functional capacity, age, education, and past work experience, the ALJ found he was capable of performing a full range of sedentary work based on the Medical-Vocational Guidelines of the Commissioner's regulations.[3] Crowley was declared not disabled for purposes of the Social Security Act.

## ANALYSIS

Our review of the Commissioner's final decision is limited to whether it is supported by substantial evidence in the record and whether the Commissioner applied the proper legal standards in evaluating the evidence.[4] "Substantial evidence is more than a scintilla, less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] In applying this standard, we will not reweigh the evidence nor substitute our decision for that of the Commissioner.[6] If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed.[7]

---

[3]20 C.F.R. § 404, Subpt. P, App. 2.

[4]**Austin v. Shalala,** 994 F.2d 1170 (5th Cir. 1993); **Villa v. Sullivan,** 895 F.2d 1019 (5th Cir. 1990).

[5]**Villa,** 895 F.2d at 1021-22 (quoting **Hames v. Heckler,** 707 F.2d 162, 164 (5th Cir. 1983)..

[6]**Villa,** 895 F.2d at 1022; **Hollis v. Bowen,** 837 F.2d 1378 (5th Cir. 1988).

[7]**Richardson v. Perales,** 402 U.S. 389 (1971).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[8] To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.[9] First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."[10] Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience.[11] At steps one through four, the burden of proof rests upon the

---

[8]42 U.S.C. § 423(d)(1)(A).

[9]20 C.F.R. § 404.1520.

[10]20 C.F.R. § 404.1520(c).

[11]20 C.F.R. § 404.1520; **Muse v. Sullivan,** 925 F.2d 785 (5th Cir. 1991).

claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.[12] If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[13]

As stated earlier, the Commissioner determined that Crowley suffered from severe impairments, including diabetes mellitus and degenerative changes of the lumbar spine which precluded his returning to his previous work as a truck driver. The Commissioner also determined that Crowley had no severe nonexertional limitations. Thereafter, relying exclusively on the Medical-Vocational Guidelines, the Commissioner found Crowley not disabled at step five of the analysis stating, "[t]he claimant has retained the residual functional capacity to perform the physical exertional requirements of a full range of sedentary work activity."

Crowley contends that the Commissioner's determination that he did not suffer from any severe nonexertional limitations is not supported by substantial

---

[12]**Fraga v. Bowen,** 810 F.2d 1296 (5th Cir. 1987) (citing **Taylor v. Brown**, 782 F.2d 1294 (5th Cir. 1986).

[13]**Muse,** 925 F.2d at 789; **Anderson v. Sullivan,** 887 F.2d 630 (5th Cir. 1989).

evidence and/or resulted from an error of law.[14] Specifically, he contends that the Commissioner failed to consider the effects of his incontinence and the adverse side effects from the prescribed medications on his ability to work. He claims these ailments constitute severe nonexertional impairments that render him disabled. Further, Crowley complains that because his nonexertional impairments significantly affect his residual functional capacity, the ALJ erred in relying exclusively on the Medical-Vocational Guidelines in reaching his decision.[15] Rather, the Commissioner was required to "rely upon expert vocational testimony or other similar evidence" to determine whether there existed other work in the national economy that Crowley was capable of performing.[16]

Incontinence

Resolving the impact of Crowley's incontinence involves two issues: (1) whether incontinence is a nonexertional impairment under the Social Security Act, and (2) whether that impairment significantly limits Crowley's ability to

---

[14]A "nonexertional" limitation is one that affects a claimant's ability to meet the non-strength demands of a job. 20 C.F.R. § 404.1569a(c)(1).

[15]**Selders v. Sullivan,** 914 F.2d 614 (5th Cir. 1990).

[16]**Fraga,** 810 F.2d at 1304 (5th Cir. 1987); **Scott v. Shalala,** 30 F.3d 33 (5th Cir. 1994); **Anderson,** 887 F.2d at 634.

perform sedentary work. Although we have not previously decided the first question, we now conclude, as have our sister circuits, that incontinence may be an impairment for purposes of the Social Security Act and must be considered by the Commissioner in determining whether a claimant is disabled.[17] Our review of the record discloses that the ALJ did not expressly consider the severity of Crowley's incontinence. Assuming, *per arguendo*, that the ALJ implicitly determined that the condition was not significant, we must nonetheless conclude that such a decision is not supported by substantial evidence.

Crowley's claim of incontinence is uncontroverted. He reported the condition when he first applied for disability benefits in September 1993. The medical evidence reflects that he complained of this ailment on at least three occasions prior to being formally diagnosed with fecal incontinence in November, 1994. At that time, his incontinence was occurring "from twice a month up to [five] times a week." At the hearing, Crowley testified that he had infrequent fecal and urinary incontinence that occurred five to seven times per month and that "there's no consistent pattern with it." Crowley's aunt, with whom he's been living since 1992, testified at the hearing as well. She reported that she notice "traces" of Crowley's

---

[17]*See e.g.,* **Gonzalez v. Sullivan,** 914 F.2d 1197 (9th Cir. 1990); **Gibson v. Heckler,** 779 F.2d 619 (11th Cir. 1986); **Rambo v. Heckler,** 728 F.2d 1583 (11th Cir. 1984); **Haynes v. Heckler,** 716 F.2d 483 (8th Cir. 1983).

incontinence on his undergarments at least "ten times" per month when she did his laundry. Despite this evidence, the only reference to Crowley's incontinence in the ALJ's findings, adopted by the Commissioner, was that its cause had yet to be diagnosed by Crowley's doctors. Similarly, Dr. Evans, the consulting physician, acknowledged that Crowley suffered from incontinence that was "episodic, intermittent and unpredictable," but concluded that he did not suffer from any non-exertional impairments that rendered him incapable of working.

Although in his order the district judge stated that "Crowley's fecal incontinence appears at most to be a nuisance that he can cope with, by use of undergarments designed for that purpose or through other means," we find no evidence whatsoever in the record to support that conclusion. Consequently, we find that a remand is in order so that Crowley's claim appropriately may be reconsidered by the Commissioner.

Adverse Side Effects of Prescribed Medications

Crowley next contends that the Commissioner's conclusion that he suffered no adverse side effects from prescribed medications is not supported by substantial evidence in the record. We agree. The ALJ's decision states that Crowley "takes medication for the neuropathy and over-the-counter medications, such as aspirin

and Tylenol for the back pain and reported no adverse side-effects." Contrary to this finding, however, Crowley testified at the hearing that he experienced nausea, dizziness, and sore throats. Crowley also testified that he has problems maintaining his blood sugar level and that the side effects he suffers as a result include blurred vision, tremors, and diminished coherence. Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [ ] pain or other symptoms."[18] We find and hold that the Commissioner's conclusion that Crowley suffered from no adverse side effects due to prescribed medications was in error.[19]

Finally, Crowley contends that the Commissioner erred in relying exclusively on the Medical-Vocational Guidelines in determining whether he was disabled. Use of the "Grid Rules" is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity. Because we conclude that the Commissioner's findings with respect to Crowley's adverse side effects due to his medications and his incontinence are unsupported by substantial evidence,

---

[18]20 C.F.R. § 404.1529(c)(3)(iv).

[19]We note that the government did not address this issue in its brief.

12

we likewise must conclude that exclusive reliance on the "Grid Rules" was in error.

For these reasons, we VACATE the decision of the district court which affirmed the Commissioner's finding that Crowley was not disabled, and REMAND to the district court with instructions to return this case to the Commissioner for further consideration of Crowley's claim consistent herewith.