# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 17, 2008

Charles R. Fulbruge III
Clerk

No. 07-31075
Summary Calendar

GAYLE M. BORDELON,

                    Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

                    Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:06-CV-197

Before SMITH, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

The Commissioner of Social Security ("Commissioner") denied Gayle M. Bordelon supplemental security income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1382 et seq., and Bordelon challenged the denial in district court. The court affirmed the Commissioner's denial, a decision that Bordelon appeals. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Factual and Procedural History

Bordelon applied for supplemental security income benefits in July 2004, alleging a disability onset date of November 20, 2003, due to depression, asthma, diabetes, kidney stones, and low back pain. Following the Commissioner's initial denial of Bordelon's claims, an administrative law judge ("ALJ") held a hearing on September 13, 2005, at Bordelon's request. Bordelon appeared at the hearing and testified with the assistance of a non-attorney representative. A vocational expert ("VE") was also present and testified as an expert witness.

On September 22, 2005, the ALJ rendered an unfavorable decision, finding that Bordelon was not disabled as defined in the Act and was not entitled to the requested benefits. The ALJ first found that Bordelon had not engaged in substantial gainful activity since the alleged disability onset date. Next, the ALJ determined that Bordelon's depression, asthma, diabetes, kidney stones, and low back pain impairments were "severe" but that they did not meet or equal one of the Commissioner's listed impairments for presumptive disability. In so doing, the ALJ found that Bordelon's allegations regarding her limitations were not credible and that Bordelon retained the residual functional capacity ("RFC") to perform a significant range of light work—specifically, that Bordelon was "able to lift 20 pounds, ten pounds occasionally and sit six hours in an eight-hour workday"; that she was "limited to one to two step instructions"; and that she was "prohibited from dealing with heavy stress and should limit[] her public interaction." Finally, the ALJ found that Bordelon had "no past relevant work" and relied on the VE's testimony to find that Bordelon could perform other work in housekeeping and cleaning jobs existing in significant numbers in the national economy.

After the Appeals Council denied Bordelon's request for review, she filed her complaint with the district court seeking review of the final administrative decision pursuant to 42 U.S.C. § 405(g). A magistrate judge recommended that the decision be affirmed, and the district court adopted the recommendation on

September 17, 2007. Bordelon appeals.

## II. Standard of Review

Our review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence supports the decision; and (2) whether the decision comports with relevant legal standards. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). If substantial evidence supports the Commissioner's decision, the findings are conclusive and the decision must be affirmed. Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992) (citation omitted). It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999) (citation omitted). As a result, this court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal quotation marks and citation omitted).

## III. Burden of Proof

A claimant is "disabled" as defined in the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a

sequential, five-step approach to determine whether a claimant is so disabled.[1] Bordelon carried the burden of proof under the first four parts of the inquiry. Leggett, 67 F.3d at 564. The burden of proof then shifted to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that Bordelon could perform. Fraga v. Bowen, 810 F.2d 1296, 1301–02 (5th Cir. 1987). Once the Commissioner identified suitable alternative employment, the burden of proof shifted back to Bordelon to prove that she could not perform the alternative work identified. Id. at 1302. Throughout the process, however, the ultimate burden of establishing disability remained with Bordelon. Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983).

## IV. Discussion

Bordelon alleges two points of error in the district court's determination that substantial evidence supports the final administrative decision that she was not disabled within the meaning of the Act: first, that the Commissioner failed to properly evaluate her mental impairments; and second, that the Commissioner posed a defective hypothetical question to the VE.

### A. Mental Impairments

Bordelon first argues that the ALJ failed to "make any decisional findings on [her] impairments which are found under categories 12.06—'Anxiety Related Disorders,' or 12.08—'Personality Disorders,'" that "the ALJ did not combine the additional non-exertional mental impairments found at categories 12.06 and 12.08 with the other impairments the ALJ recognized as severe," and that the ALJ violated binding social security ruling SSR 96-6p by failing to "discuss the weight she accorded the State Agency medical consultant's expert opinion that three medically determinable mental impairments were present." These

---

[1] The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a), 416.920(a).

arguments fail for the following reasons.

First, although the ALJ did not specifically identify anxiety disorder or personality disorder among Bordelon's severe impairments, the ALJ articulated in her decision that she considered and evaluated the medical evidence and the symptoms from Bordelon's various medical diagnoses, and Bordelon has not pointed to any symptoms affecting her RFC that the ALJ overlooked. Second, as the district court noted, Bordelon has failed to show how she specifically meets either Listing 12.06 or Listing 12.08: she fails to satisfy Listing 12.06 because she lacks medically documented findings indicating that she meets at least one of the criteria in 12.06(A)[2] and because she does not suffer from at least two of the criteria in 12.06(B) or meet 12.06(C)[3]; and she fails to satisfy Listing 12.08 because she has not shown that she meets at least one of the criteria in 12.08(A)[4]

---

[2] Listing 12.06(A) requires the claimant to meet at least one of the following: (1) "Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning"; (2) "A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation"; (3) "Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week"; (4) "Recurrent obsessions or compulsions which are a source of marked distress"; or (5) "Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A).

[3] Listing 12.06(B) requires the claimant to meet at least two of the following: (1) "Marked restriction of activities of daily living"; (2) "Marked difficulties in maintaining social functioning"; (3) "Marked difficulties in maintaining concentration, persistence, or pace"; or (4) "Repeated episodes of decompensation, each of extended duration." Alternatively, a claimant may meet Listing 12.06(C) by showing that she is completely unable "to function independently outside the area of [her] home." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(B)–(C).

[4] To meet the requirements for Listing 12.08(A), the claimant must have "[d]eeply ingrained, maladaptive patterns of behavior associated with one of the following": (1) "Seclusiveness or autistic thinking"; (2) "Pathologically inappropriate suspiciousness or hostility"; (3) "Oddities of thought, perception, speech and behavior"; (4) "Persistent disturbances of mood or affect"; (5) "Pathological dependence, passivity, or aggressivity"; or (6) "Intense and unstable interpersonal relationships and impulsive and damaging behavior." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08(A).

and two of the criteria in 12.08(B).[5]

Third, the record reflects that the ALJ specifically evaluated Listing 12.04 for affective disorders and found Bordelon failed to satisfy the requirements necessary to meet or to medically equal its criteria. Bordelon does not allege that the ALJ improperly considered Listing 12.04. It therefore follows that Bordelon similarly fails to satisfy Listings 12.06 and 12.08, because each has the same Part B requirements as Listing 12.04. An ALJ does not err by failing to specifically consider a listing if the record evidence shows that the claimant did not meet the criteria. See Brock v. Chater, 84 F.3d 726, 729 (5th Cir. 1996) ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges." (citation and footnote omitted)).

Finally, contrary to Bordelon's assertion, the ALJ did not "simply ignore" the State Agency medical consultant's opinion. Rather, in concluding that Bordelon's impairments did not equal any of the Commissioner's listed impairments for presumptive disability, the ALJ expressly noted that she had "considered the opinions of the State Agency medical consultants who evaluated [Bordelon's] impairments and have reached the same conclusion." Accordingly, substantial evidence and relevant legal standards show that the Commissioner properly evaluated Bordelon's mental impairments.

B. Hypothetical Question

Bordelon also contends that "the ALJ posited a defective Step 5 hypothetical question to the vocational expert because the ALJ did not name the diagnosed impairment Personality Disorder with dependent and histrionic features," and because the hypothetical did not include "moderate" limitations in concentration, persistence and pace, as found by the non-examining psychological consultant. As the district court explained, however, Bordelon fails to distinguish

---

[5] The requirements for Listing 12.08(B) are the same as those for Listing 12.06(B). See supra page 5, at note 3.

between her diagnosed impairments and the functional limitations caused by those impairments on her ability to work. Because the ALJ properly articulated Bordelon's specific functional limitations in the hypothetical question to the VE, the hypothetical question was valid. See Hames, 707 F.2d at 165 ("The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired . . . that she was precluded from engaging in any substantial gainful activity." (citations omitted)). It is outside of the VE's expertise to make a medical assessment of the symptoms and of the resulting limitations of a claimant's diagnosed impairment.

In addition, Bordelon has failed to show any prejudice arising from the hypothetical question's omission of her "moderate" concentration, persistence, and pace limitations. See Brock, 84 F.3d at 729. In determining Bordelon's RFC, the ALJ specifically noted that she had "considered all of the evidence presented including prior determinations made by the state agency consultants and ha[d] given the accorded weight in the light of the objective findings and medical evidence presented since their determination." The ALJ then found that based on this evidence, Bordelon retained the RFC for light work activity: "She is able to lift 20 pounds, ten pounds occasionally and sit six hours in an eight-hour workday. She is limited to one to two step instructions. She is prohibited from dealing with heavy stress and should limit[] her public interaction."[6] The ALJ's hypothetical question to the VE adequately reflected these limitations. The ALJ asked the VE to assume an individual "who's 38 years old with approximately a seventh grade educational level, and . . . no past relevant work." The hypothetical woman was "limited to lifting 20 pounds occasionally, 10 frequently [and to] "[w]alk[ing], standing, or sitting, two hours in an eight-hour day." The woman also "would need a job with only rare public interaction, low stress, so . . . simple, one-, two-step-type instructions." Such restrictions to rare public

---

[6] Bordelon does not allege any error in the ALJ's RFC determination.

interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated Bordelon's moderate concentration, persistence, and pace limitations such that the hypothetical question was proper.[7] See Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994) (holding that "the hypothetical question posed to the vocational expert by the ALJ [must] incorporate reasonably all disabilities of the claimant recognized by the ALJ").

## V. Conclusion

Finding that substantial evidence and relevant legal standards support the final administrative decision to deny Bordelon's application for supplemental security income benefits, we AFFIRM.

---

[7] The record also reflects that upon completing her questioning of the VE, the ALJ asked Bordelon's representative, "Did you have anything for [the VE]?," to which the representative responded, "No." As a result, Bordelon's "representative [was] afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question[] (including additional disabilities . . . recognized but omitted from the question)" such that the hypothetical question was proper for that reason as well. Bowling, 36 F.3d at 436.