IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2008

Charles R. Fulbruge III
Clerk

No. 07-51211
Summary Calendar

GLORIA J PINEDA

Plaintiff - Appellant

v.

MICHAEL J ASTRUE, COMMISSIONER OF SOCIAL SECURITY

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:06-CV-844

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Gloria Pineda appeals the denial of her claim for disability and supplemental security income benefits. The Social Security Administration denied her applications for benefits both initially and upon reconsideration. After a hearing, an Administrative Law Judge ("ALJ") determined that Pineda was not disabled. The Appeals Council denied her request for review, making the determination of the ALJ the final decision of the Commissioner of Social

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Security Administration. The district court affirmed, and we now do the same.

Pineda alleges that she is disabled mainly due to back, right shoulder, and neck pain and impairment. She claims a disability onset date of March 19, 2002. There is a five-step sequential procedure for making a disability determination under the Social Security Act. This procedure was set forth in Crowley v. Apfel, 197 F.3d 194 (5th Cir. 1999):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

Id. at 197–98 (internal footnotes omitted). In relevant part, the ALJ found that Ms. Pineda is not presently working at any substantial gainful activity, she has

a combination of impairments that are severe, these impairments do not meet or equal the listed impairments, she has no past relevant work activity, and she retains the residual functional capacity (RFC) to perform light exertional work, with the additional restrictions of no more than occasional bending, stooping, crouching, kneeling, and crawling; with no frequent, repetitive gross right arm movements. Most importantly, the ALJ found that given her RFC, age, education, and past work experience, Ms. Pineda can perform other jobs existing in significant numbers in the national economy. Based on these findings, the ALJ determined that Ms. Pineda was not "disabled," as defined in the Social Security Act.

The Commissioner's determination that Pineda was not disabled because she could perform available jobs must be affirmed unless that determination is either not supported by substantial evidence or involved an erroneous application of legal standards. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).

Pineda maintains that the ALJ's determination of her RFC was not supported by substantial evidence and that the ALJ applied incorrect legal standards. Contrary to Pineda's argument, the ALJ properly assessed her RFC by considering all of the relevant evidence, including the opinions of examining and non-examining physicians, as well as the combination of all of her alleged impairments. He carefully reviewed the objective medical evidence. The ALJ also specifically acknowledged that in making the RFC assessment he must and did "consider all symptoms, including, pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929 and Social Security Rule 96-7p." In sum, the ALJ applied the proper legal standards in determining Pineda's RFC.

Specifically, Pineda argues that the ALJ failed to accord proper weight to the opinions of treating and examining physicians. We reject this argument. The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). But the treating physician's opinions are not conclusive. Id. The ALJ has sole responsibility for determining disability status, and "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. (internal quotation marks omitted). The opinions may be assigned little or no weight when good cause is shown. Good cause may permit discounting the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. Id. at 455–56. A treating physician's opinion can also be rebutted when there is competing first-hand medical evidence, or if there is other medical evidence from physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion. See id. at 458.

Here, as the ALJ properly noted, the record does not contain any specific opinions from treating or examining physicians, based on objective evidence, indicating that Ms. Pineda has limitations greater than those determined by the ALJ. To the extent that the isolated opinions of various physicians and experts are in tension with one another, the ALJ was justified in accepting the testimony and findings of some over others. For example, Ms. Pineda says that the ALJ's findings with respect to her RFC did not sufficiently account for the severity of her cervical spine impairment, as it was described by particular treating

physicians.  But in 2002 an examining physician, Dr. Misra, provided a clinic impression of Pineda's medical condition that revealed little more than a cervical strain, with her extremity strength and reflexes normal.  In 2004, Dr. Misra found that although there was tenderness in the cervical spine, Pineda's motor strength and deep tendon reflexes were normal. Notably, Dr. Jones, the consultative examiner, also opined in 2004 that Pineda had full motion of the cervical spine and that she was capable of medium level work activity.  See Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987) (holding that in certain circumstances the ALJ can choose the opinion of a consultant who examined the claimant over the opinion of a treating physician).  Finally, Dr. Cox, a testifying medical expert, said that although an MRI indicated that Pineda was subject to mild to moderate disc herniation in the cervical spine and mild degenerative changes in the lumbar spine, she was capable of performing light work activity.

Pineda argues that the ALJ's determinations with respect to her neck, shoulder, back, and knee impairments also were not supported by substantial evidence.  For example, she says that the ALJ did not properly address her knee and lower back impairments.  But this assertion is not supported by the record. Dr. Singh, who examined the claimant in 2002, noted that back pain complained of earlier had improved by December 2002.  Neither Dr. Singh nor Dr. Misra suggested that any problem with the plaintiff's lower back or her knee was a severe impairment.  Dr. Jones stated that plaintiff had mild bilateral knee varus but indicated that this did not preclude her from kneeling frequently and, in fact, the ALJ imposed a limitation of only occasional kneeling.  Dr. Jones noted markedly increased lumbar lardosis, yet he found that she could work at the medium exertional level.  When considering the record as a whole, there was

substantial evidence to support all of the ALJ's findings and his determination of Pineda's RFC.

Pineda also argues that the ALJ's decision that she can perform work existing in significant numbers in the national economy is not support by substantial evidence. In response to a hypothetical question posed by the ALJ that correctly incorporated Pineda's RFC, age, education, and past work experience, a vocational expert testified that Pineda could work as a hand packer, office cleaner, or laundry folder. Based on the evidence in record and the vocational expert's testimony, the ALJ determined that there were jobs for Pineda in the national economy. Pineda argues that the ALJ erred because some of the jobs the vocational expert said she could perform are described in the Dictionary of Occupational Title (DOT) as having exertional requirements that exceed her capabilities.

Substantial evidence supported the ALJ determination that Pineda could perform jobs that exist in significant numbers in the national economy. As an initial matter, we note that an ALJ utilizes vocational experts because of their knowledge of job requirements and working conditions. Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995). Here, the ALJ correctly described Pineda's limitations to the vocational expert, so we should accord weight to his testimony delineating jobs that met Pineda's exertional and other capabilities. Pineda argues that there is not substantial evidence for the ALJ's determination because at least some of the jobs that roughly correspond to those identified by the vocational expert are described in the DOT as exceeding her exertional level. But these supposed conflicts do not create reversible error here. The record as a whole supports the ALJ's determinations. Moreover, claimants cannot scan the record for implied conflicts between the specific testimony of an expert

6

witness and the voluminous provisions of the DOT and then present these apparent conflicts as reversible error, at least when as here the claimant's counsel did not explore the supposed conflicts when cross-examining the vocational expert. See Carey, 230 F.3d at 146–47.

Finally, we reject Pineda's argument that the ALJ's determination that her testimony was not credible was not based on the proper legal standard. In judging the claimant's credibility, the ALJ can consider such things as medical reports, the claimant's daily activities, and the medications the claimant is taking. Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991). The ALJ must weight the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints. Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). But it is not required that the ALJ follow formalistic rules in evaluating credibility. Id. at 164. Here, the ALJ evaluated the intensity and persistence of Pineda's alleged symptoms. His decision reflects that he considered all of the relevant factors as delineated in the case law and regulations. There is more than substantial evidence in the record to support the ALJ's determination to accord limited weight to Pineda's complaints of disabling plain.

AFFIRMED.