Rodney WILLIAMS, Plaintiff–Appellant

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant–Appellee.

No. 13–31111.

United States Court of Appeals, Fifth Circuit.

July 15, 2014.

---

Paul Brian Spurlock, Esq., Metairie, LA, for Plaintiff–Appellant.

Corey Stephen Fazekas, Esq., Social Security Administration Office of The General Counsel Region VI, Dallas, TX, Jason M. Bigelow, Assistant U.S. Attorney, U.S. Attorney's Office, New Orleans, LA, for Defendant–Appellee.

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

PER CURIAM: *

Petitioner–Appellant Rodney Williams appeals the Social Security Administration's denial of his application for Supplemental Security Income benefits and disability insurance benefits. The district court adopted the magistrate judge's report and recommendation granting the Commissioner's motion for summary judgment and thereby affirming the denial of disability benefits. Williams timely appealed. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I

### A

In early March 2010, Rodney Williams suffered a heart attack. Soon thereafter, on March 11, 2010, he filed his third application[1] for Supplemental Security Income and disability insurance benefits, alleging three "severe impairments": (i) status post cardiac stent placement, (ii) status post right popliteal artery percutaneous athrectomy, and (iii) depression.[2] In support of his application, Williams offered medical records from his cardiologist, as well as recent psychiatric evaluations. Record evidence of Williams' psychiatric history included: a 2008 report from Sandra Durdin, a psychologist, a 2010 report from Richard Burns, Williams' treating psychiatrist, and two subsequent progress notes from Burns.

In her 2008 report, Durdin's examination findings included: that Williams had a normal mood and was alert; that he was oriented in all spheres; and, that he had adequate memory, cognitive skills, logical thought content, and good concentration.[3] Durdin also noted that Williams was capable of understanding, remembering, and carrying out simple and detailed instructions; he could maintain focus on simple, repetitive tasks for two hours at a time.[4] But, Durdin opined that it would be impossible to diagnose a mood disorder until his substance abuse was addressed.

Several months after his heart attack, Burns performed a psychiatric evaluation of Williams. Using a check-box form, Burns opined that Williams suffered from multiple symptoms including: a major, recurrent depressive disorder that was severe, and accompanied by psychotic features rendering Williams with a substantial loss of ability to perform functions commensurate with the functions of unskilled work.[5] But in subsequent progress reports, Burns stated that Williams was "doing much better" and that he was in a "good mood" with only "mild" depressive symptoms and no psychosis.[6]

### B

The Social Security Administration ("SSA") ALJ denied Williams application for benefits. The SSA has established a five-step sequential evaluation process to determine whether a claimant is eligible for benefits:[7]

i. The claimant must not be engaged in substantial gainful work activity ("SGA"), which is activity that involves physical or mental activities and typically is performed for pay or profit;[8]

ii. The impairment must be "severe," meaning that it significantly limits an individual's ability to perform basic work activities.[9]

---

1. His second application—alleging disability due to bipolar disorder, paranoid schizophrenia, and depression since January 7, 2005—was denied two weeks prior to his alleged disability onset date of March 6, 2010.

2. Williams does not appeal the ALJ's determinations regarding disability related to the cardiac stent placement or the popliteal artery percutaneous athrectomy.

3. R. 399–400.

4. R. 400.

5. R. 643–44.

6. R. 793.

7. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a).

8. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.920(b); 20 C.F.R. § 416.972(a).

9. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

iii. The claimant's impairment or impairments must meet or equal a medically equivalent impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1;[10]

iv. The claimant must not have the residual functional capacity ("RFC") to perform the requirements of past relevant work;[11]

v. Once the claimant carries his burden in steps (i)-(iv), the SSA must establish that other SGA exists in the national economy that the claimant would be able to perform. If the defendant satisfies this requirement, then the burden returns to the claimant to prove that he does not have the requisite RFC to perform other work in the national economy.[12]

As we have explained, "[a]t steps one through four, the burden of proof rests upon the claimant to show he is disabled."[13] If the claimant carries his burden, "at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments."[14] Proceeding through this five-step analysis, the ALJ first found that Williams was not engaged in SGA. Second, the ALJ found that Williams was severely impaired under the Act because his impairments significantly limited his ability to perform basic work activities. Third, the ALJ found that Williams did not have an impairment or combination of impair-ments medically equivalent to one of the listed impairments in the relevant regulations. Finally, the ALJ found that Williams was unable to perform requirements of past relevant work, but held that the SSA had established that Williams was capable of performing other SGA in the national economy. Accordingly, the ALJ held that Williams was not disabled for the purpose of obtaining Social Security benefits.[15]

After exhausting his administrative remedies, Williams timely sought review in district court. The magistrate judge issued a report and recommendation, recommending that the district court grant the SSA's motion for summary judgment. Williams filed objections to the report and recommendation, arguing that in denying him benefits, the SSA relied too heavily on Durdin's opinions, at the expense of the Burns' opinion, and that the ALJ substituted her own opinion for that of the treating physician. The district court overruled these objections, adopted the report and recommendation, and granted summary judgment in favor of the SSA. Williams timely appeals.

## II

"Our review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard."[16] Substantial evi-

10. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).

11. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

12. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g).

13. *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir.2001) (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)).

14. *Id.*

15. R. 56, 60.

16. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir.2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994)); *see* 42 U.S.C. §§ 405(g), 1383(c)(3).

dence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17] Accordingly, we must uphold the decision if the evidence is "more than a mere scintilla and less than a preponderance."[18] "[W]e may not reweigh the evidence, try the issues de novo, or substitute our judgment for that of the [Commissioner]."[19]

In evaluating whether there is substantial evidence, four elements of proof are weighed, including: (i) objective material facts; (ii) diagnoses and opinions of treating and examining physicians; (iii) claimant's subjective evidence of pain and disability; and (iv) claimant's age, education, and work history.[20] Importantly, the "Commissioner, rather than the courts, must resolve conflicts in the evidence."[21] And the "ALJ has the sole responsibility for determining the claimant's disability status."[22]

On appeal, Williams contends that the record lacks substantial evidence to support the ALJ's decision to deny disability benefits. Williams argues (i) that the ALJ improperly relied on Durdin's 2008 psychological evaluation because this evaluation predates his alleged disability onset date; (ii) that the ALJ impermissibly substituted her own opinion for that of the treating psychiatrist, Burns; and, (iii) that the ALJ should have contacted Burns for clarification of the basis for his opinion.

■ These arguments fail to persuade. To begin with, Durdin's 2008 examination is relevant because "[e]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."[23] Here, Durdin's 2008 opinion remains particularly relevant because it pertains to the same claimed disability—depression—albeit with a different date of onset, for which Williams now seeks disability benefits.

■ Second, there is substantial evidence in the record to justify the ALJ's decision to give less weight to Burns' 2010 examination. Although a treating physician's opinions and diagnoses are to be accorded considerable weight, "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony."[24] Good cause may include "statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or [are] otherwise unsupported by the evidence."[25] And the ALJ is "entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly."[26] Here, the ALJ gave "little weight" to Burns' 2010 examination wherein he opined—using a check-box form—that Williams was suffering from severe depression and disabled.

17. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

18. *Perez*, 415 F.3d at 461.

19. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir.1989).

20. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995).

21. *Id.* at 174.

22. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1984) (citation and internal quotation marks omitted).

23. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004).

24. *Greenspan*, 38 F.3d at 237.

25. *Id.*

26. *Id.* (citation and internal quotation marks omitted).

This decision is supported by substantial evidence, including Burns' own notes that are inconsistent with his 2010 opinion. In subsequent progress notes, Burns explains that Williams had a "good initial response" to prescribed medications, and that Williams was "doing much better," was in a "good mood," and only had "minor depression." And the ALJ noted that much of Burns' 2010 opinion "appear[ed] to unduly rely upon [Williams'] subjective history ..., rather than actual testing."

Moreover, Burns' findings were inconsistent with Durdin's earlier findings. In 2008, Durdin made detailed observations, including that Williams' "attention and concentration were good[;]" that Williams had normal affect and mood; that Williams had adequate memory, cognitive skills, and average intellectual functioning; and, that Williams is not psychotic and he had the "ability to understand, remember and carry out simple instructions and detailed instructions ... assuming sobriety and compliance." Importantly, Durdin's 2008 opinion recognized and accounted for Williams' history of substantial substance abuse, whereas Burns' 2010 opinion noted that there was no history of substance abuse. Put simply, the ALJ found Durdin's 2008 opinion to be more credible than Burns' 2010 opinion, a determination that was the ALJ's to make and well-supported by substantial evidence.

Finally, although the ALJ noted that she had some difficulty deciphering Burns' notes, it is clear that she was able to decipher them; indeed, the ALJ repeatedly quotes and cites from them. And it is undisputed that the full records from Burns were obtained. Moreover, the records that the ALJ had difficulty interpreting do not help Williams; instead, those records—Burns' subsequent examination notes—serve to discredit the 2010 examination on which Williams relies. Accordingly, we find no merit in Williams' argument that the ALJ failed to fully develop the record.

In sum, there is "more than a mere scintilla" of record evidence to support the ALJ's determinations.[27] Because "the Commissioner's fact findings are supported by substantial evidence, they are conclusive."[28] We AFFIRM.