# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-41278
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 13, 2015

Lyle W. Cayce
Clerk

RACHEL LEA GARCIA,

Plaintiff - Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:12-CV-340

Before HIGGINBOTHAM, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Rachel Lea Garcia, proceeding pro se, appeals the Social Security Administration's denial of her application for disability insurance benefits. The district court denied her initial appeal. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-41278

I.

In May 2006, Garcia fell and injured her back while working in the gardening department at Walmart.[1] She soon sought medical treatment, reporting "sharp, shooting, and burning" back pain.[2] Her doctors noted tenderness in her lumbar region,[3] and she was eventually diagnosed with lumbar disc displacement.[4] Soon after her initial diagnosis, she started physical therapy, which was not effective in remedying her lower back pain.[5] She continued treatment through 2006 and into 2007, however, and was given two lumbar epidural steroid injections, which, along with several other medications, were relatively effective in controlling her pain.[6] Garcia had several follow-up visits throughout 2008, where her doctor noted that her pain medications had "been able to control her pain fairly well," and "allow[ed] her to live a more functional lifestyle."[7]

In January 2010, Garcia applied for disability insurance; shortly after, she saw two doctors, and her records were reviewed by a third.[8] First, she saw Dr. Oscar Oandasan about ten times between March 2010 and August 2011.[9] Dr. Oandasan wrote that Garcia reported that she had continued pain and tenderness in her lower back, and that her MRI indicated that she had several bulging discs in her lumbar region.[10] In March 2011, Dr. Oandasan filled out a single-page physical capacity questionnaire, indicating that Garcia could

---

[1] *See* R. 64-65.

[2] *Id.* at 400.

[3] *Id.* at 560. Garcia's doctor ordered an MRI, which showed evidence of spinal disk protrusion. *See id.*

[4] *Id.* at 281.

[5] *See id.* at 400.

[6] *See id.* at 561.

[7] *Id.* at 418; *see also id.* at 563.

[8] *Id.* at 41.

[9] *See id.* at 500-02.

[10] *Id.* at 501-02.

stand or walk "less than 2 [hours]" per day, could only occasionally lift ten pounds, and could never lift twenty pounds or more.[11]  Next, in April 2010, Garcia was seen by Dr. William Culver for a comprehensive consultative evaluation.  Dr. Culver reported that her "movements were decreased, particularly to the lower back," and she had some pain, but "could heel and toe walk, and squat and rise without difficulty."[12]  He also opined that Garcia "can perform the majority of her [activities of daily living], but will have difficulty with heavy household chores."[13]  Finally, in May 2010, Garcia's medical records were reviewed by Dr. Andrea Fritz, who indicated that Garcia could stand up to six hours per eight-hour work day, could occasionally lift 20 pounds, and could frequently lift ten pounds.[14]

During this time, Garcia's disability application continued.  Her initial claim was denied, and she requested a hearing before an administrative law judge (ALJ).[15]  After a hearing, where Garcia testified, the administrative law judge again denied her claim.[16]  He concluded that Garcia "has the residual functional capacity to perform light work,"[17] and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."[18]  These included working as a call out operator, charge account clerk, and systems monitor, all of which are sedentary unskilled jobs.[19]

---

[11] *Id.* at 499.  In March 2010, Dr. Oandasan filled out a lumbar spine questionnaire, which noted similar limitations.  *See id.* at 498.

[12] *Id.* at 484-85.

[13] *Id.* at 486.

[14] *Id.* at 490.

[15] *See id.* at 41.

[16] *Id.*

[17] *Id.* at 47

[18] *Id.* at 50.

[19] *Id.* at 51.

No. 14-41278

Garcia applied to the agency's Appeals Council, which concluded that there was no basis for review.[20]

Garcia appealed to the district court, and the case was referred to Magistrate Judge Stacy. In a comprehensive opinion, she recommended that the district court affirm the agency's decision.[21] The district court did so, and adopted Judge Stacy's recommendations in full.[22]

This timely appeal follows.

## II.

## A.

"Our review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard."[23] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[24] It is "more than a mere scintilla and less than a preponderance."[25] Our task as a reviewing court is narrow: we must "scrutinize[] the record to determine whether such evidence is present," but do not reweigh the evidence, evaluate conflicts of evidence, or substitute our judgment for that of the agency.[26] "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive."[27]

---

[20] *Id.* at 555.

[21] *See id.* at 553-72.

[22] *Id.* at 580-81.

[23] *Perez* v. *Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[24] *Williams* v. *Colvin*, 575 F. App'x 350, 353-54 (5th Cir. 2014) (unpublished) (quoting *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971)).

[25] *Perez*, 415 F.3d at 461 (quoting *Masterson* v. *Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

[26] *See id.*

[27] *Id.*

4

No. 14-41278

B.

Garcia raises four objections. In light of the demanding standard of review she must summit, none persuade.

First, Garcia argues that the agency erred in relying on the April 2010 consultative report provided by Dr. Culver. She posits that this report was flawed, because Dr. Culver did not have the raw radiology images of her back. Dr. Culver, however, was provided and relied upon a radiological report on Garcia's spine.[28] Ultimately, Garcia's argument comes down to the weight the ALJ places on Dr. Culver's report – and it is the ALJ's task, not ours, to weigh evidence.[29] Our circuit has not established a rule categorically excluding medical reports if they use (or fail to use) certain methods; rather, we have held the opposite: stating that the ALJ may place "less weight, little weight, or even no weight" on a report if it includes "statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."[30] While the ALJ might have been within his rights to place less weight on a medical report that was based in part on a radiological report, rather than raw images, we cannot conclude that he erred by crediting Dr. Culver's report as he did. Garcia also argues that she had no opportunity to cross-examine Dr. Culver. However, she had the right to subpoena him, but never exercised that right by requesting his testimony before the hearing.[31] She cannot object now.

Second, Garcia argues that the ALJ failed to consider her subjective reports of chronic back, hip, and knee pain when evaluating whether she was

---

[28] *Id.* at 486, 488. The report stated, in full, that "[a]lignment of the lumbar spine is satisfactory. There is mild spondylosis mainly consisting of small osteophytes." *Id.* at 488.

[29] *See, e.g.*, *Nugent* v. *Astrue*, 278 F. App'x 423, 425 (5th Cir. 2008) (unpublished).

[30] *Greenspan* v. *Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

[31] *See* 20 C.F.R. § 404.950(d)(2) (providing that parties may request that the ALJ issue subpoenas to witnesses, if a request is filed at least 5 days before the hearing).

disabled. "Since pain alone or in conjunction with other impairments can give rise to a disability, the ALJ must consider subjective evidence of pain as testified to by the claimant; failure to give consideration to the subjective evidence of pain and disability as testified to by the plaintiff is reversible error."[32]  In this case, however, the ALJ considered Garcia's reports of pain, but determined that "the claimant's subjective complaints are inconsistent with the objective medical evidence" and Garcia's own assessment of her reported daily activities.[33]  Under our court's precedent, so long as the ALJ gave due consideration to Garcia's report of her pain – and he did – his eventual functional determination was not reversible error.[34]

Third, Garcia challenges the hypothetical question posed by the ALJ to the vocational expert.  Because the hypothetical summarized the ALJ's assessment of Garcia's functional capacity, we construe her argument as a challenge to his finding of her physical capabilities.[35]

After reviewing Garcia's medical record and examining her personally, the ALJ posed the following hypothetical to the vocational expert:

> [W]e've got a younger individual.  She's got a limited education.  I find she's literate.  Exertional ability to occasionally lift 20 pounds, 10 pounds frequently.  Sitting ability six of eight. Walking/standing four of eight.  Push, pull, and gross/fine is unlimited, except occasional pushing with the lower extremities bilaterally.  Frequent use of the hands bilaterally.  Occasional stairs, no ladders, ropes, scaffolds or running.  Can occasionally

---

[32] *Scharlow* v. *Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 1981) (internal citation omitted).

[33] R. 48.

[34] *See Adams* v. *Astrue*, 340 F. App'x 219, 221 (5th Cir. 2009) (unpublished) ("Thus, the ALJ clearly considered and accounted for Adams' statements about her pain, but did not find the medical and other evidence to be consistent with her statements about the intensity, duration and restrictive effect of the pain.").

[35] *See, e.g.*, *Bordelon* v. *Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (unpublished) ("[H]ypothetical question posed to the vocational expert by the ALJ must incorporate reasonably all disabilities of the claimant recognized by the ALJ.") (internal quotation marks and bracket omitted) (quoting *Bowling* v. *Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).

No. 14-41278

bend, stoop, crouch, crawl, balance, and twist. No squatting given her left knee issue. Limited exposure to dust, fumes, gases, and chemicals, heights, dangerous machinery, uneven surfaces. There's no mental impairment. Okay, based on those elements, what kind of work, if any, could be completed?[36]

In essence, the ALJ adopted a functional assessment consistent of the report of Dr. Culver, who performed a consultative evaluation, rather than the one-page form provided Dr. Oandasan, Garcia's treating physician. Garcia argues this choice was reversible error. We cannot agree.

"[T]he opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."[37] This is not an ironclad rule, and such opinions can be disregarded if they are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."[38] Ultimately, the ALJ retains the "sole responsibility for determining the claimant's disability status."[39] Here, the ALJ determined that:

> Dr. Oandasan's opinion [that Garcia can only lift 10 pounds and can sit for less than an hour] is given little weight because the medical records and Dr. Oandasan's treatment notes do not support it. . . . [F]indings on examination did not appear to any significant degree. Records received from Dr. Oandasan showed that on examination, there was only localized tenderness's in lower back and right hip. MRI of lumbar spine and right hip showed bulging, but no herniated, discs. In February 2011, the claimant had negative straight leg raising.[40]

---

[36] R. 85.

[37] *Perez* v. *Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005) (quoting *Greenspan* v. *Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)).

[38] *Id.* at 466 (quoting *Greenspan*, 38 F.3d at 237).

[39] *Greenspan*, 38 F.3d at 237 (quoting *Moore* v. *Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

[40] R. 49-50.

We have reviewed this record evidence,[41] and agree with the district court's conclusion that "[b]ecause Dr. Oandasan's treatment notes do not contain any objective findings that would support his opinion as to Garcia's functional limitations – particularly no findings of muscle weakness or radiculopathy – the ALJ did not err in discounting that opinion," and adopting the opinions of Drs. Culver and Fritz.[42]  Indeed, as we have repeatedly held "[t]he Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case."[43] The ALJ properly did so here, and did not err in crafting his functional assessment.

Finally, Garcia posits ALJ erred in relying on the vocational expert.  The vocational expert, she argues, did not provide any specific definitions of the qualifications for the jobs she discussed, nor did she offer a "description of the job or the skills that were needed and did not have her reference book to find and provide information crucial to [her] case."[44]  We disagree.  "[A]n ALJ utilizes vocational experts because of their knowledge of job requirements and working conditions."[45]  So long as "[t]he ALJ correctly described [the claimant's] limitation to the vocational expert," as he did here, "we should accord weight to [the expert's] testimony delineating jobs that met [the claimant's] exertional and other capabilities."[46]  We have reviewed the vocational expert's testimony.  It is true that on one occasion she did not provide a verbatim quotation of the formal definition of the requirements with a job with a reasoning level of three.[47]  She did paraphrase that definition,

---

[41] *See id.* at 500-02.

[42] *Id.* at 566-67.

[43] *Chaparo* v. *Bowen,* 815 F.2d 1008, 1011 (5th Cir. 1987).

[44] Appellant Br. at 6.

[45] *Pineda* v. *Astrue,* 289 F. App'x 710, 714 (5th Cir. 2008) (unpublished).

[46] *Id.*

[47] *See* R. 87.

No. 14-41278

however, and read the ALJ a written description of the physical demands of the jobs that she recommended.[48]   Garcia does not argue that any of the vocational expert's statements were in error, and in light of the detail provided by the expert, we cannot conclude that the ALJ reversibly erred when he relied on the expert's testimony.

## III.

We AFFIRM the judgment of the district court.

---

[48] *See id.* at 90-91.