**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 00-10267**
_____

**CRAIG A. SHAVE,**

**Plaintiff-Appellant,**

**VERSUS**

**KENNETH S. APFEL, COMMISSIONER OF SOCIAL SECURITY,**

**Defendant-Appellee.**

--------------------
Appeal from the United States District Court
for the Northern District of Texas
--------------------
January 9, 2001

Before KENNEDY,[*] JONES and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Craig A. Shave appeals a final judgment dismissing his 42 U.S.C. § 405(g) action for judicial review and affirming an administrative law judge's (ALJ) decision denying his application for social security disability benefits.  We affirm.

I.

Shave was injured in a 1992 automobile accident.  Shave claims total disability and an inability to work arising primarily from neck, shoulder, and chest pain arising from the accident.  Shave filed his social security claim for disability benefits on September 21, 1994.  Shave's claim was denied, and then denied

_____

[*]Circuit Judge of the Sixth Circuit, sitting by designation.

again on reconsideration. Shave requested a hearing, which was held in June 1996 before ALJ Lindsey E. Martin. Shave, his brother, and his wife testified concerning his abilities. The ALJ also relied upon the testimony of a vocational expert, who testified that Shave's past relevant work included employment as a route deliverer, self-employed glass repairer, auto parts manager, power shovel operator, auto mechanic, and retail store manager. The vocational expert further testified that these jobs ranged from exertionally light (auto parts manager, retail store manager) to exertionally heavy (auto mechanic), and from semi-skilled to skilled. The case was submitted primarily, however, upon the voluminous medical records relating to Shave's condition. Some time after the hearing, ALJ Martin retired and the case was reassigned by ALJ W. Howard O'Bryan. While the case was pending before the second ALJ, Shave sought leave and was granted permission to file additional medical records relating to his condition. In March 1997, ALJ O'Bryan entered a decision denying benefits.

## II.

The five step procedure for making a disability determination under the Social Security Act was cogently set forth in Crowley v. Apfel, 197 F.3d 194 (5th Cir.1999):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of

impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

Id. at 197-98 (footnotes omitted).

In this case, the ALJ declined to make a definitive finding at step 1. The ALJ noted that when Shave was last employed in substantial gainful activity was an issue complicated by the need to characterize Shave's various business dealings, which included continued ownership of certain small businesses. The ALJ did point out that, contrary to his claim and his hearing testimony, Shave was still gainfully employed at least through 1994. The ALJ then concluded that he could dispense with a finding at step 1 because Shave was not, in any event, disabled.

With respect to step 2, the ALJ reviewed allegations of severe physical impairment arising from shoulder strain and pain and severe mental impairment arising from the somatoform disorder. The ALJ concluded that the shoulder strain placed some limitations on his life activities, including his work capacity, and could therefore be considered a severe impairment. The ALJ found no severe impairment, however, arising from Shave's claimed disabling pain. In making that determination, the ALJ considered Shave's

daily activities, the medications he takes, the functional restrictions placed on him, the kinds of treatment he has had, precipitating and aggravating factors, the type, dosage, effectiveness and adverse side effects of pain medications taken, the nature, location, intensity, onset, frequency, and radiation of the pain alleged, and the observations of treating and reviewing physicians. The ALJ further found no severe mental impairment arising from the somatoform disorder. The ALJ expressly found that Shave's subjective complaints were not completely supported by objective medical evidence, and that to the extent those claims were not supported, his credibility with respect to those subjective complaints was diminished. As a consequence, the ALJ concluded at step 3 that Shave did not have an impairment or combination of impairments that met any of the medical listings.

The ALJ concluded the inquiry at step 4, finding that Shave retained the capacity to perform past relevant work, including work as a driver, owner of contract hauling business, owner of windshield repair business, operator of convenience store, sales, and manager of an auto parts store. Indeed, the ALJ noted that Shave continued to operate his contract hauling business, which according to record evidence generated more than $2,100 in gross revenue per week. Based upon the above analysis, the ALJ held that Shave retained the ability to work and that benefits were properly denied.

Shave sought review by the Appeals Council. Shave argued that the ALJ's decision was not supported by substantial evidence, and that the ALJ to whom the case was reassigned was obligated to conduct a second administrative hearing before rendering a decision

in his case.  While the case was pending on appeal, Shave sought leave and was granted permission to file additional medical records relating to his current medical condition.  In March 1998, Shave filed approximately twenty-five pages of additional medical records, which were considered by the Appeals Council.  In June 1998, the Appeals Council entered a decision denying further review.

Shave then filed the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The parties consented to proceed before a magistrate judge and cross-motions for summary judgment were filed.  In January 1998, the magistrate judge entered a final judgment in favor of the Commissioner, affirming the ALJ's determination that Shave is not entitled to disability benefits.  Shave filed a timely appeal.

III.

Shave first maintains that the ALJ's decision is premised upon factual error because it fails to accord sufficient weight to medical records provided by his treating physician.  For example, the ALJ stated in one portion of his opinion that Shave would not be able to lift more than 50 pounds, while his treating physician twice reported that Shave should be limited to lifting 35 pounds.  As an initial matter, we note that the passage identified by Shave is probably not material to the ALJ's decision.  The ALJ concluded that Shave retained the ability perform certain specific jobs identified by the vocational expert as past relevant work, including jobs that could be classified as sedentary or light depending upon how they are performed by Shave.  Those jobs do not require an exertional ability in excess of that identified by

Shave's own physician. See 20 C.F.R. § 404.1567(b) (light work involves lifting no more than 20 pounds). Thus, Shave's argument does not tend to undermine the ALJ's ultimate determination that Shave could perform past relevant work. Moreover, and to the extent that the ALJ's determination reflected a limited rejection of the opinions or medical records provided by his treating physician, we find that rejection to be justified by the character of the records provided and to be supported by overwhelming medical evidence from other treating and reviewing physicians. See Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000) ("Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.").

Shave also maintains that the ALJ's decision is premised upon reversible factual error because the ALJ failed to consider evidence that Shave was taking pain medication when deciding whether he was suffering from disabling pain. Once again, we disagree. When read in context, the ALJ's decision reflects an accurate understanding of Shave's medical regimen, and further, rests upon a number of independently sufficient factors that support the ALJ's decision that Shave does not suffer from disabling pain.

Shave also argues that the ALJ's finding that he had no limitations due to a mental impairment is not supported by substantial evidence. He refers to his treatment in October 1994 by Dr. Khatami, who was of the opinion that Shave suffered from

post traumatic stress syndrome arising from the accident. Shave was treated over a period of two weeks and then discharged from Dr. Khatami's care. While there is evidence that Shave continued to experience stress and perhaps depression arising from the accident and other personal concerns, there is no evidence tending to support the proposition that Shave suffered from a disabling mental impairment that precluded him from seeking gainful employment. There was substantial evidence to the contrary. A January 3, 1995 evaluation by Dr. Tomlinson reflected no more than slight impairment in social, occupational, or school functioning. Significantly, Shave did in fact continue to work during at least some of this period. Shave reported to Dr. Tomlinson that he owned a body shop where he did detail work and rebuilt wrecked and burned automobiles, and that he lived by himself in an apartment, took care of all his personal needs and household chores, was able to drive, handled his own affairs, and enjoyed working on cars. He visited friends and dated about once a week. Shave himself described his present mental health as "fair." It is apparent from Shave's own statements to Dr. Tomlinson that as of January 1995, he had no mental difficulties that were severe enough to impair his basic ability to function. We conclude that there is an ample evidentiary basis for the ALJ's determination that Shave did not suffer from a disabling mental impairment.

Having reviewed the record in its entirety, we conclude that the ALJ's decision denying benefits is adequately supported by competent and objective medical evidence.

IV.

Shave next argues that the ALJ committed legal error by deciding his case without personally conducting a second hearing once the case was reassigned. Shave relies upon internal procedures defined in the Hearings, Appeals and Litigation Law Manual, which provides:

> When an Administrative Law Judge (ALJ) who conducted a hearing in a case is not available to issue the decision because of death, retirement, resignation, prolonged leave of 30 or more days, etc., the Hearing Office Chief ALJ will reassign the case to another ALJ. The ALJ to whom the case is reassigned will review the record and determine whether or not another hearing is required to issue a decision. The ALJ's review will include all of the evidence of record, including the cassette recording of the hearing.
>
> 1. If the ALJ is prepared to issue a fully favorable decision, another hearing would not be necessary.
>
> 2. If the ALJ is prepared to issue a less than favorable decision, another hearing may be necessary. For example, another hearing would be necessary if . . . the claimant alleges disabling pain, and the ALJ believes that the claimant's credibility and demeanor could be a significant factor in deciding the case.

HALLEX I-2-840. Shave points out that the ALJ expressly found that his credibility was diminished to the extent not supported by the objective medical evidence. Thus, Shave argues that ALJ O'Bryan had an imperative and unavoidable obligation to hold a second hearing prior to deciding his case.

This Circuit has expressed a strong preference for requiring the social security administration to follow its own internal procedures. See Newton, 209 F.3d at 459 ("While HALLEX does not carry the authority of law, this court has held that where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than would otherwise be required."). This Court requires, however,

a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision. See id.

As an initial matter, we express doubt about whether the circumstances at issue in this case fall within the letter or spirit of the rule at issue. The ALJ's limited rejection of Shave's credibility was premised, not upon Shave's demeanor or any other factor that would be better observed in a live hearing, but upon controverting and overwhelming medical evidence to the contrary. Moreover, the ALJ's limited rejection of Shave's credibility was based in part upon the conflict between Shave's hearing testimony and the written record of his own characterization of his condition at the time medical treatment was received. For these reasons, Shave's credibility is not necessarily a "significant" or deciding factor in the decision and a second hearing would not have added in any meaningful way to the administrative record. More importantly, Shave does not offer any theory that would support a contrary conclusion. Therefore, without regard to whether HALLEX I-2-840 would require a second hearing in this case, Shave cannot make the showing of prejudice required to support relief from the ALJ's decision.

V.

Shave's final argument is that the ALJ's decision must be reversed because the additional medical records submitted to the Appeals Council were not before the ALJ when a decision was made. The Appeals Council decided that the additional evidence failed to provide a basis for changing the ALJ's decision. We agree. The great majority of the records provided state earlier diagnoses and

then impose further limitations without providing any objective medical support for those limitations. Thus, the evidence is of only limited probative value with respect to the proposition that Shave's condition experienced any significant deterioration material to the ALJ's disability determination. Further, to the extent Shave's additional submission is probative at all, those records are not material to the ALJ's determination that Shave was not entitled to benefits for the period sought. See Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994) (evidence relating to subsequent deterioration of a previously non-disabling condition is not material unless it relates to the time period for which benefits were sought and denied); id. at 164 n.20 (noting that claimant was free to seek benefits for the period covered by the additional medical records). We agree with the Appeals Council's determination that the additional medical records do not provide any basis for further review at this time.

## CONCLUSION

The final judgment entered below is in all respects AFFIRMED.