# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30830

MARSHA AVERY,

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2015

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:12-CV-01337

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Marsha Avery's application for supplemental Social Security income and disability benefits was denied by an administrative law judge. The denial was upheld by the Appeals Council and the district court. Avery then appealed to this court. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30830

FACTUAL AND PROCEDURAL BACKGROUND

Marsha Avery injured her left knee in June 2009, while demonstrating to her son how to swing a baseball bat. An MRI of her knee revealed tears of both the medial and the lateral menisci along with other knee problems. Dr. R. Dale Bernauer, an orthopedic specialist, first prescribed therapy. When therapy proved insufficient to resolve Avery's knee weakness and pain, Dr. Bernauer referred her to a surgeon who operated on her knee in September 2009. At that time, the surgeon thought a second surgery might be needed.

From February to April 2010, Avery attended a 13-week training program to become a phlebotomist. She worked 40 hours a week as a phlebotomist from July to September before being terminated for insubordination. In October 2010, Avery underwent another MRI which revealed problems similar to the diagnosis in 2009, including tears in the medial and lateral menisci, along with mild chondromalacia (pain in the kneecap). Avery was referred to Dr. Nathan Cohen, who recommended nonoperative conservative treatment and administered a steroid injection.

In July 2009, Avery filed for Social Security disability and supplemental security income benefits due to her knee injury. In October 2009, the claim was denied based on a finding that her condition did not keep her from working. Avery filed a request for a hearing. One was held before an administrative law judge ("ALJ") in December 2010. Based on Avery's testimony, the ALJ determined that an orthopedic consultative examination was needed. Dr. Bernauer conducted the exam in January 2011. Dr. Bernauer reported that Avery complained of left knee pain and walked with a limp, but that her flexion was 90 degrees. He found that Avery's knee was stable in some positions, and that she had full motion in her left hip and ankle. The report also stated that another surgery was being contemplated. Dr. Bernauer concluded that Avery could not stand for longer than 10 minutes or walk farther than 100 yards.

2

No. 14-30830

On February 16, 2011, Dr. Cohen performed surgery on Avery's knee. The postoperative diagnosis was a bucket handle tear of the medial meniscus, a superficial tear of the lateral meniscus, and chondromalacia. On February 18, Avery arrived at a follow-up appointment in a wheelchair and carrying a walker. Dr. Cohen advised her to "get rid of the wheelchair and her walker" and to increase her activity level gradually. On February 24, Dr. Cohen again examined Avery and found she was "getting along extremely well" with "[n]o complaints," and though she felt her knee was "slightly weak," she had "no pain." She was found to have "excellent" range of motion and "reasonable gait." The medical records from the second surgery were not submitted to the ALJ.

The ALJ denied Avery's application for benefits on April 1, 2011. He thoroughly discussed the evidence and concluded that, while the overall evidence supported "significant limitations," it also supported that Avery was "not restricted from all levels of work activity." He noted that Avery was able to go to school and work full-time despite her impairments,[1] and that she did not stop working due to a medical condition, but, instead, due to termination.

As to Avery's "allegations of pain and functional limitations," the ALJ concluded they were "not fully credible." He noted that, although Avery had initially been directed by a physician to elevate her leg due to swelling, "such restriction was not continued post surgery." Further, Avery's post-surgery attendance at training and full-time work suggested "the swelling was not a hindrance to her ability to function." As to Dr. Bernauer's report, the ALJ considered it and assigned it "some but not controlling weight" as the "claimant's own admitted functioning since the injury and the surgery was greater than that opined by Dr. Bernauer." The ALJ determined that, in light of the entire record, Avery had the residual functional capacity ("RFC") to

---

[1] The impairments were said to be "Disorder of the Left Knee and Obesity."

No. 14-30830

perform light work except that she could only occasionally climb stairs, stoop or kneel, or perform related tasks.

After the denial, Avery appealed to the Appeals Council where she submitted new evidence. The new evidence consisted of Avery's medical records from January 20 to April 14, 2011, including records of her second surgery and certain therapy records.[2] The Appeals Council denied review, finding that the additional evidence did not provide a basis for changing the ALJ's decision. On judicial review, the district court ruled in favor of the Commissioner of Social Security. Avery filed a timely appeal.

## DISCUSSION

"Our standard of review of social security disability claims is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (citation omitted).

The Social Security Act definition of disability includes the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ uses a five-step process for evaluating disability under the Act:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed

---

[2] In its denial of review, the Appeals Council noted that some of the new evidence was post-decision and informed Avery that if she wanted the Council to consider whether she was disabled after April 1, 2011, she would need to apply again.

No. 14-30830

in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citations omitted). The claimant bears the burden of proof on the first four steps, but on the fifth step, the burden shifts to the Commissioner. *Id.* (citations omitted).

Avery argues that (1) the ALJ's decision is not supported by substantial evidence or free of legal error, and (2) the new evidence submitted to the Appeals Council would have changed the ALJ's decision.

## I.    *Substantial Evidence*

Avery argues that the ALJ's finding about Avery's RFC is not supported by substantial evidence.  Relatedly, she argues that legal error occurred because the ALJ failed to give Dr. Bernauer's report controlling weight without good cause.[3]  We examine each argument.

We are to affirm the Commissioner's decision unless we conclude that the ALJ applied the wrong legal standard or that substantial evidence does not support the ALJ's decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  "Substantial evidence is enough that a reasonable mind would support the conclusion."  *Taylor,* 706 F.3d at 602 (citation omitted).  "The evidence must be more than a scintilla, but it need not be a preponderance."  *Id.* (citation and quotation marks omitted).  "We will not re-weigh the evidence, try the

---

[3] In her statement of the issue, Avery cites to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995).  There we held that because the record did not clearly establish the effect of Ripley's condition on his ability to work, the ALJ's decision denying benefits was not supported by substantial evidence.  *Id.* at 557.  Because there was no report from a treating physician regarding Ripley's ability to work, we remanded and instructed the ALJ to obtain such a report.  *Id.* at 557-58.  We do not have that situation here.  Here, the record establishes Avery's ability to work.  Further, the record contains a medical opinion by Avery's treating physician that was considered by the ALJ in rendering his decision.

questions *de novo*, or substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citation omitted). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704 (citation omitted).

The record contains "more than a scintilla" of evidence in support of the ALJ's RFC finding. Avery's own testimony detailed that, post-injury, she was able to go to school for a new career, and that she worked 40 hours a week for two months before being terminated for insubordination. Also, Dr. Bernauer's report included evidence in support of the ALJ's decision. It revealed that Avery's left knee was stable in some positions; the patella compression sign was positive; and though she lacked 10 degrees of extension, her flexion was 90 degrees. It also noted that Avery had full motion in her left hip and ankle.

As to Avery's testimony regarding pain and functional limitations, the ALJ found the allegations were "not fully credible." An ALJ's decision may be supported by substantial evidence irrespective of a claimant's contrary testimony where the ALJ finds the testimony to be "less than fully credible." *Masterson*, 309 F.3d at 272. To the extent Avery argues the evidence is not substantial because it is contrary to Dr. Bernauer's conclusions, the ALJ found that Avery herself contradicted Dr. Bernauer's report. In one precedent, we found an ALJ's decision that a claimant could perform "medium work" was supported by substantial evidence notwithstanding a physician's opinion to the contrary because the claimant's own testimony contradicted the physician's report. *See Watson v. Barnhart*, 288 F.3d 212, 216 (5th Cir. 2002).

Further, we generally uphold an ALJ's decision denying benefits even if some findings are suspect so long as the claimant's "argument does not tend to undermine the ALJ's ultimate determination that [the claimant] could perform

past relevant work." *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001). The ALJ determined that Avery was capable of performing past relevant work as a data entry clerk and cardiac monitor technician. These positions are classified as "sedentary," which "involves lifting no more than 10 pounds at a time," "sitting, [and] a certain amount of walking and standing . . . ." 20 C.F.R. § 404.1567(a) ("sedentary work"). This classification is less demanding than "light work." 20 C.F.R. § 404.1567(b) ("light work"). The same evidence that supports the ALJ's RFC finding supports its determination that Avery could perform past relevant work; therefore, reversal is not warranted.

Avery also argues that the ALJ should not have used a hypothetical in his ruling on Step Four, because "vocational factors, age, education and work experience are used in Step Five hypothetical inquiries, not Step Four." Even if that was error, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citation and quotation marks omitted). Such procedural errors justify vacating "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Here, the ALJ's alleged improper use of the hypothetical factors does not cast into doubt the substantial evidence supporting the decision.

Finally as to the evidence, Avery argues it was error for the ALJ to give Dr. Bernauer's report "some but not controlling weight" without good cause. Although "considerable weight" should usually be given to a treating physician's views "in determining disability, the ALJ has sole responsibility for determining a claimant's disability status." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citation and quotation marks omitted). For good cause, a fact-finder may afford "less weight, little weight, or even no weight . . . to the physician's testimony." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

No. 14-30830

The good cause exception allows an ALJ to discount the treating physician's testimony when it is "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.* (citation omitted).

Avery argues for the first time in her reply brief that the ALJ did not simply give Dr. Bernauer's report insufficient weight; it gave it no weight. Generally we decline to consider arguments made for the first time in a reply brief: "An argument first supported in a reply brief comes too late because the appellee is not entitled thereafter to respond." *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 927 (5th Cir. 2008). Avery's argument, though, was made in response to an argument in the Commissioner's brief. We conclude that an appellant's rebuttal in its reply brief of an argument made by an appellee in its brief, even if it alters in some respects the appellant's earlier position, does not inject a new argument or issue into the appeal. Rather, the appellee is the one who injected the matter.

Though Avery recharacterized the ALJ's analysis in her reply brief, that new label does not strengthen the argument. Whether giving "less weight, little weight, or even no weight," for good cause the ALJ has wide authority in considering the treating physician's opinions. *Greenspan*, 38 F.3d at 237.

As previously noted, Avery testified that, post-surgery, she attended thirteen weeks of training and worked full-time for two months before being terminated for insubordination. This "admitted functioning" is evidence that is contrary to Dr. Bernauer's conclusion that Avery could not stand for longer than 10 minutes or walk farther than 100 yards.

Even if the ALJ should have given more weight to Dr. Bernauer's conclusions, prejudice must be shown to flow from the error. *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (citation omitted). The burden is on the claimant to show that prejudice. *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th

8

Cir. 2012) (citations omitted). Avery has not shown that if the ALJ had given Dr. Bernauer's report controlling weight, it would have changed the outcome. At the very least, the ALJ's determination that Avery could perform past relevant work as a data entry clerk or cardiac monitor technician – both sedentary positions – is consistent with the limitations in Dr. Bernauer's report. Because the limitations identified in Dr. Bernauer's report are not inconsistent with the ALJ's finding that Avery could perform past relevant work, Avery has failed to show that prejudice resulted from the weight the ALJ gave to Dr. Bernauer's opinions. *See Brock*, 84 F.3d at 728-29.

We have reviewed the record and conclude the ALJ reached a decision supported by substantial evidence and free of legal error.

## II.    *Submission of New Evidence*

Avery also argues that the new evidence she submitted to the Appeals Council undermines the ALJ's decision. That evidence allegedly revealed her "need for and her receipt of a second knee surgery, post hearing," and "support[ed] Dr. Bernauer's pre-hearing medical opinion which specifically established the effects [Avery's] condition had on [her] ability to work." If new evidence is submitted after the Commissioner's benefits decision and there is "a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley*, 67 F.3d at 555.

Avery argues that there is a reasonable probability that, had the new evidence been before the ALJ, it would have ruled differently. We find instead that the "new" evidence supports the ALJ's findings about disability. The evidence shows that, at an appointment eight days after her second surgery, Avery was "getting along extremely well," with "[n]o complaints," and though her knee felt "slightly weak," she had "no pain." The same report notes that

Avery had an "excellent [range of motion] and reasonable gait." The pre-decision physical therapy reports note that less than three weeks after the second surgery, Avery stated that her knee pain was "slowly decreasing" and that she was "trying to exercise more each day." Though Avery often received ice after her physical therapy sessions to decrease knee swelling, the reports stated that she "tolerated treatment well" and demonstrated "continued improvement in strength and stability." In fact, just two weeks after the second surgery, Avery reported to the physical therapist that she had "moved furniture for several hours."

As to Avery's argument that her need for and receipt of a second surgery would alone have changed the ALJ's decision, the record reveals the ALJ already knew that a second surgery was being contemplated. We agree with the Appeals Council's determination that the new evidence submitted by Avery would not have provided a basis for changing the ALJ's decision.

AFFIRMED.