**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 12, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHNNY P. LEE,

　　Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

　　Defendant - Appellee.

No. 15-6027
(D.C. No. 5:13-CV-00772-F)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **McHUGH**, Circuit Judges.
_____

　　Johnny P. Lee appeals from an order of the district court affirming the

Commissioner's decision denying his application for Supplemental Security Income

benefits (SSI). Mr. Lee protectively filed for these benefits on January 26, 2010,

alleging disability beginning on January 1, 2005 based on low back pain, seizure

disorder, Bright's nephritis, depression, and associated problems. The agency denied

his applications initially and on reconsideration.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

On November 7, 2011, Mr. Lee received a de novo hearing before Ralph Wampler, an administrative law judge (ALJ).  On December 30, 2011, a different ALJ, Douglas S. Stults, issued a decision on behalf of ALJ Wampler denying Mr. Lee's application for benefits.

In his decision, the ALJ determined that Mr. Lee retained the residual functional capacity (RFC) to perform light work, with the following restrictions:

> [he] must avoid even concentrated exposure to hazards . . . such as machinery and heights and avoid driving; [he] can perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, [but] cannot relate to the general public, and can adapt to a work situation.

Aplt. App., Vol. II at 20.

The ALJ found that Mr. Lee had no past relevant work but that considering his age, education, work experience, and RFC, there were a significant number of other jobs that he could perform in the national economy.  Applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, Subpt. P, App. 2, rule 202.17 (the grids) as a framework, the ALJ concluded that Mr. Lee was not disabled within the meaning of the Social Security Act.  The ALJ reasoned that if Mr. Lee had the RFC to perform the full range of light work, Rule 202.17 would direct a finding of "not disabled," and that "the additional limitations [that the ALJ found as part of his RFC] have little or no effect on the occupational base of unskilled light work."  Aplt. App., Vol. II at 25.  The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

2

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient RFC to perform work in the national economy, given his age, education and work experience. *See id.* at 751.

On appeal, Mr. Lee raises three issues. He contends that the ALJ improperly failed to explain why he rejected portions of a consulting physician's report concerning his mental impairment. He takes issue with the ALJ's credibility analysis, arguing that medical evidence and other factors supported his testimony concerning his mental and physical limitations and that the ALJ gave erroneous reasons for finding his allegations less than fully credible. Finally, he argues that the ALJ erred in failing to obtain testimony from a vocational expert (VE) and by relying instead on the Grids. Finding no reversible error in the issues raised, we affirm.

**I. Evaluation of Consultant's Mental RFC Opinion**

Gary Lindsay, Ph.D., a nonexamining agency psychological consultant, completed a Mental Residual Functional Capacity Assessment (MRFCA) evaluating Mr. Lee's ability to perform workplace-related mental activities. In Section I of the MRFCA, "Summary Conclusions," Dr. Lindsay checked boxes indicating that Mr. Lee was "markedly limited" in his "ability to understand and remember detailed instructions," "to carry out detailed instructions," and "to interact appropriately with the general public," and was "moderately limited" in his ability "to maintain attention and concentration for extended periods," "to accept instructions and respond appropriately to criticism from supervisors," and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Aplt. App., Vol. III at 457-58. In Section III of the MRFCA, the "Functional Capacity Assessment," Dr. Lindsay explained that Mr. Lee could "perform simple tasks with routine supervision," "relate to supervisors and peers on a superficial work basis," and "adapt to a work situation," but that he could not "relate to the general public." *Id.* at 459.

The ALJ assigned great weight to Dr. Lindsay's assessment. His RFC assessment included, essentially verbatim, the limitations from Section III of the MRFCA. But Mr. Lee complains that the ALJ erred by not also including, or at least discussing, the moderate limitations Dr. Lindsay identified in Section I, thereby adopting "some, but not all, of [Dr. Lindsay's] recommended limitations." Aplt. Opening Br. at 13. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)

(stating that "a moderate impairment is not the same as no impairment at all" and that an ALJ may not simply "pick and choose through an uncontradicted medical opinion," rejecting some moderate restrictions without explanation while accepting others). We discern no error here.

Having adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I. The MRFCA itself explains that Section I "is for recording summary conclusions derived from the evidence in the file" and directs that "[d]etailed explanation of the degree of limitation for each category . . . is to be recorded in Section III." Aplt. App., Vol. III at 457. This approach is consistent with the directives provided in the Social Security Administration's Program Operations Manual Systems (POMS).[1] The POMS provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and indicates that adjudicators are to use the Section III narrative as the RFC assessment:

> The purpose of section I . . . is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's . . . degree of limitation. . . . It is the narrative written by the psychiatrist or psychologist in Section III . . . that adjudicators are to use as the assessment of RFC. Adjudicators must take the RFC assessment in section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.

_____

[1] We defer to the agency's interpretations stated in the POMS unless they are "arbitrary, capricious, or contrary to law." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). Mr. Lee argues that the POMS provisions should not constrain our review of this issue, but he fails to show that they are not entitled to deference.

POMS DI 25020.010 B.1. (boldface omitted).

This does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III. The POMS further states that "[t]he degree and extent of the capacity or limitation [identified in Section I] must be described in narrative format in Section III [of the MRFCA]." POMS DI 24510.063 B.2. (boldface omitted). The POMS also provides that Section III is for "explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." POMS DI 24510.060 B.4.a. But in this case, the Section III narrative—which the ALJ incorporated in his RFC assessment— explained, accounted for, and delimited each of the moderate limitations expressed in Section I of the MRFCA. We may illustrate this point graphically as follows:

| Moderate Limitation Found by Dr. Lindsay in Section I | Narrative Explanation Provided in Section III and Adopted by ALJ |
|---|---|
| "The ability to maintain attention and concentration for extended periods." | "Claimant can perform simple tasks." |
| "The ability to accept instructions and respond appropriately to criticism from supervisors." | "Claimant can [work] with routine supervision." "Claimant can relate to supervisors . . . on a superficial work basis." |
| "The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." | "Claimant can relate to . . . peers on a superficial work basis." |

In sum, the ALJ did not ignore the moderate limitations Dr. Lindsay identified in Section I of the MRFCA. Nor did he pick and choose between the limitations in the MRFCA without explanation. Rather, the ALJ's RFC assessment reflected the

6

moderate limitations identified by Dr. Lindsay in Section I of the MRFCA, as explained in the narrative portion of his assessment, Section III.

## II. ALJ's Assessment of Mr. Lee's Credibility

The ALJ found that Mr. Lee's statements concerning the intensity, persistence and limiting effects of his symptoms were not fully credible. Mr. Lee challenges this conclusion on two grounds. First, he contends ALJ Stults' signature of the decision for ALJ Wampler violated the SSA's requirements, which prejudiced him because ALJ Stults had no opportunity to observe his demeanor at the hearing. Second, he argues that the ALJ failed to appropriately address his pain and other nonexertional impairments.

Mr. Lee contends that ALJ Stults' substituted signature violated the Commissioner's internal procedures set forth in the Hearing, Appeals, and Litigation Law Manual ("HALLEX") § I-2-8-40 ("Administrative Law Judge Conducts Hearing But is Unavailable to Issue Decision").[2] This section of the HALLEX establishes procedures to be followed where an ALJ has conducted a hearing in a case and either (1) is unavailable to issue a decision because of death, retirement, resignation, or extended illness, in which case the case will be assigned to another ALJ for further proceedings, including another hearing, if necessary; or (2) has approved a final decision draft but is unavailable to sign, in which case the Hearing Office Chief ALJ

---

[2] *See* http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-8-40.html (last visited November 10, 2015).

may sign the decision if the authoring ALJ has given him written authorization to do so.

The notice accompanying the decision, sent in ALJ Wampler's name, states that "I carefully reviewed the facts of your case and made the enclosed decision." Aplt. App., Vol. II at 12, 14. Both this language, and the format of ALJ Stults' signature on behalf of ALJ Wampler, suggest that ALJ Wampler approved a final decision draft but was unavailable to sign the final decision. Mr. Lee argues that if this is the case, the signature violated the HALLEX requirements because there is no showing that (1) ALJ Stults signed the decision as Hearing Office Chief ALJ; and that (2) ALJ Wampler provided prior affirmative written authorization, in the form required by the HALLEX, for ALJ Stults to do so.

But even if the signature did not technically meet HALLEX requirements, this would not necessarily require reversal. Assuming without deciding that we can grant relief for violations of HALLEX procedures,[3] we agree with the Fifth Circuit that only prejudicial violations of HALLEX provisions entitle a claimant to relief. *See Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001) (applying prejudice standard for alleged HALLEX violation).

Mr. Lee suggests that he has demonstrated the required prejudice because "the signing ALJ did not have the opportunity to observe his demeanor at the hearing."

---

[3] The Ninth Circuit has stated that the HALLEX does not create judicially enforceable rights. *See, e.g., Lockwood v. Comm'r*, 616 F.3d 1068, 1072 (9th Cir. 2010) ("HALLEX does not impose judicially enforceable duties on either the ALJ or this court.").

Aplt. Opening Br. at 18. As we have indicated, however, the evidence reflects no more than a substituted signature, not a decision prepared *ab initio* by a substituted ALJ. ALJ Wampler had the opportunity to observe Mr. Lee at the hearing. We find no reversible error in the alleged failure to follow HALLEX procedures.

Mr. Lee next argues that the ALJ failed to adequately assess his pain and associated nonexertional impairments because he relied on boilerplate language rather than using the specific credibility factors we outlined in *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). We disagree. In his decision, the ALJ made extensive credibility findings that satisfied the requirements outlined in *Kepler*. *See* Aplt. App., Vol. II at 21-23. Although these findings primarily concerned Mr. Lee's complaint of disabling seizures, the findings concerning Mr. Lee's positive drug and alcohol tests, his choice to purchase alcohol rather than medications, the inconsistency in his hearing testimony concerning his prior incarceration, his criminal history, and the physical activities described in the medical records in excess of what would be expected from a claimant with allegedly disabling impairments, provided substantial evidence for a generalized finding of diminished credibility. We discern no error in this aspect of the ALJ's credibility analysis.

Mr. Lee also complains that the ALJ's RFC determination failed to account for his pain. We disagree. Given that the ALJ found that Mr. Lee's lower back pain was a severe impairment, more specific references to that specific pain in the RFC analysis would have been desirable. But we cannot conclude that the ALJ committed harmful error. The record contains very limited references to lower back pain.

9

*See* Aplt. App., Vol. III at 345, 347 (consulting examiner's April 2010 report noting "history of chronic lower back pain" for which Mr. Lee had received no medical treatment, and observing that upon testing both cervical and thoracic spine were non-tender with full range of motion, that lumbar-sacral spine had full range of motion, and that straight leg raising was negative bilaterally in both sitting and supine positions); Vol. IV at 631 (January 2007 hospital record noting "no pain" with circled zero on zero-to-ten pain scale), 651-59 (August 2006 hospital record noting lower back pain with radiculopathy but negative x-ray findings resulting from recent accident when bull pinned Mr. Lee against a wall). The ALJ's RFC determination, limiting Mr. Lee to light work, adequately accounted for this limitation and was consistent with the medical evidence.

### III. ALJ's Failure to Obtain VE Testimony/Use of Grids

The ALJ considered Mr. Lee's age, education, work experience, and RFC, and found there were jobs existing in significant numbers in the national economy that he could perform. To define the basic mental demands of "competitive, remunerative unskilled work," the ALJ cited SSR 85-15, which states that such demands "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Aplt. App., Vol. II at 25 (citing SSR 85-15, 1985 WL 56857, at *4 (1985)). He further cited the notes following Medical-Vocational Rule 202.00, *see* Aplt. App., Vol. II at 25, which state that "the primary work functions in the bulk of unskilled work relate to working with

10

things (rather than with data or people)." 20 C.F.R., Pt. 404, Subpt. P., App. 2, § 202.00(g). The ALJ concluded that "[Mr. Lee] retains the mental skills for unskilled work," noting his "capacity for work with routine supervision and work-related contact," and that his "non-exertional limitations had little or no effect on the occupational base of unskilled light work." Aplt. App., Vol. II at 25.

"The mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Reliance on the Grids is appropriate where "the claimant can perform a substantial majority of the work in the designated RFC category." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). Although an ALJ may determine that a nonexertional impairment has only a negligible effect on the range of jobs available, "he must back such a finding of negligible effect with the evidence to substantiate it." *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987).

Here, the ALJ supported his use of the grids by discussing Mr. Lee's mental impairment, its effect on his job performance under SSR 85-15 and § 202.00(g) of the Medical-Vocational Guidelines, and Mr. Lee's continuing ability to perform a substantial majority of light unskilled work. Although he did not expressly discuss the effect of Mr. Lee's need to avoid hazards on the light unskilled job base, the omission was harmless. *See* SSR 85-15, 1985 WL 56857, at *8 ("A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional

11

levels."). The ALJ's discussion was sufficient to meet his step-five obligations. *See Mitchell v. Astrue*, 498 F. App'x 757, 760 (10th Cir. 2012) (affirming ALJ's reliance on SSR 85-15 and the grids in case involving both exertional and non-exertional mental impairments).

We affirm the district court's judgment affirming the Commissioner's final decision denying Mr. Lee's application for SSI benefits.

Entered for the Court

Jerome A. Holmes
Circuit Judge